UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-mc-00160-RJC-DSC

| | |
|---|---|
| *In re* Application of<br><br>ELLIOTT ASSOCIATES L.P., ELLIOTT INTERNATIONAL L.P., AND THE LIVERPOOL LIMITED PARTNERSHIP,<br><br>Petitioners, to Take Discovery Pursuant to 28 U.S.C. § 1782. | **ORDER** |

**THIS MATTER** is before the Court on Intervenor Porsche Automobil Holding SE's ("PSE") motion to vacate, (Doc. No. 30), the *ex parte* Order, (Doc. No. 7), granting the application of Elliott Associates L.P., Elliott International L.P., and Liverpool Limited Partnership ("Petitioners") to take discovery pursuant to 28 U.S.C. § 1782 from Bank of America Corporation ("BAC"), (Doc. No. 1), and to quash Petitioners' subpoena. After reviewing the entire record in this case, the Court will grant PSE's motion and vacate the *ex parte* Order.

I.     PROCEDURAL BACKGROUND

On December 29, 2011, Petitioners, along with other investors, commenced shareholder litigation in Germany against PSE. (Doc. No. 2: Pet. Mem. at 8-9). Petitioners allege that PSE engaged in market manipulation in 2008 by concealing its strategy to acquire Volkswagen AG ("VAG") through making false and misleading public statements, ultimately causing damages to Petitioners of over €100 million. (Id. at 8-9). On December 17, 2012, PSE's former Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO") were indicted for their involvement in the alleged scheme. (Doc. No. 31: PSE Mem. at 7). Following a 22-day trial, PSE's former CEO and CFO were acquitted on March 18, 2016. (Id. at 8).

1

On April 13, 2016, Petitioners' case, along with other cases making similar allegations against PSE, was stayed pending the resolution of a "model case" established under the German Act on Model Case Proceedings in Disputes Regarding Capital Information Act (the "Model Case Act"). (Doc. No. 32: Meier Dec. at ¶¶ 36, 42). The Model Case Act establishes a procedure for a higher regional court to decide, in one representative case, the legal and factual questions common to at least 10 related securities actions. (Id. at ¶¶ 37-41). On December 5, 2016, the Higher Regional Court of Celle selected ARFB Anlegerschutz UG ("ARFB") as the model case Plaintiff, and Petitioners (together, "German Plaintiffs") became invited parties to the model case. (Id. at ¶ 44). Roughly 10 months later, the Higher Regional Court of Celle issued its preliminary ruling in the model case, concluding that, even accepting the allegations as true, the German Plaintiffs' claims against PSE were not likely to be viable. (Id. at ¶ 55).

On March 13, 2018, ARFB and another Plaintiff, Effecten-Spiegel, (the "New York Petitioners") filed a § 1782 application in the Southern District of New York seeking documents from Merrill Lynch & Co., Inc. ("ML & Co.") and Merrill Lynch, Pierce, Fenner & Smith, Inc. regarding PSE's transactions in VWAG shares and options, related strategies, and financing provided by Merrill Lynch entities. *In re Effecten-Spiegel AG and ARFB Anlegerschutz UG*, No. 1:18-mc-93 (S.D.N.Y. Mar. 13, 2018) (the "New York Application"). That court held, to the extent responsive documents even existed, that such documents were not located in the district and labeled Petitioners' requests "a fishing expedition" for a foreign subsidiary's documents. (Doc. No. 33-1: Han. Dec. Ex. A at 29-30). Three months after the court's decision, the New York Petitioners moved for partial reconsideration of the Order denying the New York Application. (Doc. No. 33-2: Han. Dec. Ex. B). Following another round of briefing, the court denied the

motion. (Id.). The New York Petitioners appealed, and the Second Circuit subsequently affirmed the district court's findings. *Effecten-Spiegel Ag v. Lynch*, 771 Fed. Appx. 38 (2d Cir. 2019).

On July 27, 2021, Petitioners filed the instant § 1782 Application seeking discovery from Merrill Lynch International Bank ("MLIB") (incorporated in Ireland), Merrill Lynch International ("MLI") (incorporated in the United Kingdom), and Merrill Lynch International and Co. C.V. ("MLICO") (incorporated in Curacao) through BAC. (Doc. No. 1). Petitioners allege that MLIB, MLI, and MLICO, former ML & Co. entities now owned by BAC following the merger of the two companies in 2013, advised PSE regarding loan facilities and options strategies to conceal its acquisition strategy from the marketplace and to manipulate the market in shares of VAG stock to the detriment of Petitioners and other investors. (Doc. No. 2: Pet. Mem. at 10).

A district judge granted Petitioners' application *ex parte* on August 11, 2021, and Petitioners served BAC with a subpoena. (Doc. No. 7: Order; Doc. No. 8: Aff. of Service). BAC filed a motion to quash the subpoena on November 2, 2021. (Doc. No. 14). PSE moved to intervene on November 4, 2021, (Doc. No. 17: Motion), and subsequently filed the instant motion to vacate the *ex parte* Order, (Doc. No. 30: Motion). The matter was reassigned to this Court and is ripe for resolution.

## II. LEGAL STANDARD

Title 28, United States Code, Section 1782 permits litigants in foreign proceedings to obtain discovery in the United States to assist in the foreign litigation. As this District and others in this Circuit have recognized, "[a] party may file—and a district court may grant—a Section 1782 application *ex parte*." *In re P.T.C. Prod. & Trading Co.*, AG, No. 1:20-MC-00032-MR-WCM, 2020 WL 7318100, at *1 (W.D.N.C. Dec. 11, 2020) (quoting *In re Green Development Corp.*, No. WDQ-15-2985, 2015 WL 10319091, at *1 (D. Md. Oct. 1, 2015)). Section 1782 applications are commonly granted *ex parte* recognizing "[t]he respondent's due process rights are

3

not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." *In re P.T.C.*, 2020 WL 7318100, at *1 (quoting *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2015)).

"[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). Even where the statutory prerequisites of § 1782 are satisfied, a court has "wide discretion" to grant or deny discovery. *Al Fayed v. United States*, 210 F.3d 421, 424 (4th Cir. 2000) (quoting *In re Esses*, 101 F.3d 873, 876 (2d Cir. 1996)).

A district court's exercise of discretion is guided by four non-exclusive factors that the Supreme Court articulated in *Intel*: (1) "whether 'the person from whom discovery is sought is a participant in the foreign proceeding [in which case] the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad,'" *In re Blue Oil Trading Ltd.*, 2009 WL 3247854 (W.D.N.C. Oct. 5, 2009) (quoting *Intel*, 542 U.S. at 264-65); (2) "the 'nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance,'" *id.*; (3) "whether the request 'conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States,'" *id.*; and (4) "whether the discovery requests should be scaled back to avoid undue burden," *id.* District courts consider the *Intel* factors in light of the twin aims of § 1782: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Al Fayed*, 210 F.3d at 424.

### III. DISCUSSION

#### A. The *Intel* Factors

##### 1. BAC is Not a Participant in the Foreign Litigation

BAC is not a participant in the German proceedings. Hence, the first *Intel* factor weighs in favor of Petitioners. PSE argues that the key issue under the first *Intel* factor is whether the material sought is available through the foreign proceeding and note that much of the discovery sought should be in the files of PSE and the German prosecutors—placing it within the reach of the German court. (Doc. No. 31: PSE Mem. at 19). In support of this assertion, PSE cites one case from this Circuit, *German Am. Trade Ass'n v. Waldthausen*, 2013 WL 6843081, (W.D.N.C. Dec. 27, 2013) (denying a § 1782 petitioner's motion to compel production of additional, allegedly privileged documents because some of the requested documents had already been supplied to the foreign court). However, the facts of *Waldthausen* are dissimilar from the facts surrounding Petitioners' § 1782 application because BAC has not yet produced any materials to the German court.

Additionally, PSE's arguments regarding the first *Intel* factor are unavailing because courts within this Circuit have repeatedly found that if a subpoena recipient is not a participant in the foreign litigation, then that fact alone is sufficient to fulfill the first *Intel* factor. *In re Polymer Sols. Int'l, Inc.*, No. CV DKC 18-1864, 2019 WL 1239778, at *5 (D. Md. Mar. 18, 2019); *In re P.T.C. Prod. & Trading Co., AG*, No. 1:20-MC-00032-MR-WCM, 2020 WL 7318100, at *2 (W.D.N.C. Dec. 11, 2020) ("Aegis is not a participant in the ICC Arbitration. Accordingly, the first discretionary factor weighs in favor of granting the Application." (citing *Polymer*, 2019 WL 1239778, at *5)); *In re Chevron Corp.*, No. 7:10-MC-00067, 2010 WL 4883111, at *2 (W.D. Va. Nov. 24, 2010) ("Scardina is thus not a participant in the foreign proceedings, and the first *Intel* factor is met.").

### 2. The Character of the German Proceedings and the German Court's Lack of Receptivity to Judicial Assistance

"As to the second factor, in the Fourth Circuit, courts have applied the general approach that, in the absence of a foreign court's clear rejection of the assistance, the § 1782 application should be granted." *In re P.T.C. Prod.,* at *2. Here, at a preliminary hearing on October 12, 2017, the Higher Regional Court of Celle held "we preliminarily do not see any sufficient reason to require [PSE] to submit documents" and "[we] have accordingly refrained so far and will likely also, unless something changes our view, refrain from asking for the investigative files of the state prosecutor." (Doc. No. 32-11: Meier Dec. Ex. 11 at 33). Since the preliminary hearing, the Higher Regional Court has twice reaffirmed its initial ruling. (Doc. No. 32: Meier Dec. at ¶¶ 71-74). Additionally, on September 2, 2021, ARFB and Petitioners represented to the Higher Regional Court that they had "completed their response to the preliminary information of the court." (Id. at ¶ 74). While not amounting to an explicit rejection of assistance, the Higher Regional Court has expressed a lack of receptivity towards the requested discovery.

Accordingly, the character of the proceedings abroad must be considered. As PSE highlights, the German proceedings are based on conduct alleged to have occurred over 13 years ago in a litigation that has spanned nearly a decade. (Doc. No. 31: PSE Mem. at 17). Furthermore, since the Higher Regional Court's preliminary hearing in October of 2017, German Plaintiffs have filed 49 motions, consisting of 29 motions to recuse the judges of the court, 18 motions alleging that their due process rights were violated when recusal motions were not adequately heard, and two motions alleging that their constitutional rights were violated due to purported violations of internal court rules regarding the selection of judges. (Doc. No. 32: Meier Dec. at ¶¶ 65-66). The Higher Regional Court has criticized German Plaintiffs for their "large number of unfounded, largely even meritless recusal petitions, remonstrances, and additional procedural actions"—going

6

so far as to describe one motion as "an abuse" and "obviously unfounded and meant to serve only to delay the proceedings." (Doc. No. 32-13: Meier Dec. Ex. 13 at 1, 10).

The Court is not persuaded by Petitioners' claim that a separate German court, adjudicating an entirely different case, is receptive to § 1782 discovery from PSE. (Doc. No. 36: Pet. Resp. at 8). Rather, this Court agrees with PSE that the model case likely would already have concluded but for the delay caused by the series of recusal motions. (Doc. No. 31: Mem. at 8). Consequently, the second *Intel* factor weighs against the eleventh-hour request and in favor of PSE.

### 3. Petitioners' Attempted Circumvention of German Proof-Gathering Restrictions

"The third *Intel* factor weighs against approval of a Section 1782 application where the applicant uses the statute to attempt to circumvent foreign proof-gathering standards. This factor entails neither a discoverability requirement nor a quasi-exhaustion requirement that would force litigants to seek information through the foreign or international tribunal before requesting discovery from the district court." *P.T.C. Prod.*, 2020 WL 7318100, at *3.

PSE argues that the § 1782 application is an end run-around of the Higher Regional Court's preliminary ruling that Petitioners' claims are meritless, and that discovery is unwarranted. (Doc. No. 39: PSE Reply at 7). Petitioners counter PSE's argument by comparing their § 1782 application with a § 1782 application filed by PSE before a separate German court, adjudicating an entirely different case. (Doc. No. 36: Mem. at 11).

Here, the Court finds that Petitioners are attempting to use the § 1782 application to circumvent foreign proof-gathering standards. *In re Effecten-Spiegel AG*, the district court characterized Petitioners' § 1782 application as an attempt to circumvent foreign proof-gathering restrictions because it was filed "years after the German Litigation had been commenced and after a German court preliminarily found that the claims are without merit, denying [P]etitioners'

7

requests for further discovery in the process." *In re Effecten-Spiegel AG*, at *2. That court's reasoning applies equally to Petitioners' instant § 1782; therefore, the third *Intel* factor weighs in favor of PSE.

### 4. The Burden of Petitioners' Discovery Requests

Under the fourth *Intel* factor, the relevant inquiry is whether the discovery sought is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. "[T]he undue burden contemplated by Rule 45 is one placed on the direct recipient of the subpoena." *Polymer*, 2018 WL 1239778, at *9. However, § 1782 discovery should be denied where an applicant "can[] obtain the information from other sources[] without imposing a burden" on a non-party to the foreign action. *In re Lazaridis*, 865 F. Supp. 2d 521, 528 (D.N.J. 2011); *see In re Cantrell*, 2009 WL 1066011, at *2 (W.D. Mo. Apr. 21, 2009) (quashing subpoena where "the documents requested could be first sought from the party defendants").

PSE argues that discovery would impose an undue burden on BAC because Petitioners have either already sought and were denied the requested discovery or could have done so in Germany. (Doc. No. 31: PSE Mem. at 20). Additionally, PSE highlights that Petitioners offer no justification for requiring BAC to bear such burdens when any responsive documents are likely to be in the possession of PSE or German prosecutors. (Doc. No. 39: Reply at 11). It is significant that BAC did not become the parent entity for the Merrill Lynch subsidiaries until 2013. (Doc. No. 1: Application at 4). Thus, the Court credits BAC's argument that Petitioners' request for documents dating back to January 1, 2005 are beyond any applicable retention period and BAC will be unable to provide Petitioners with an estimate of the number of documents covered by the subpoena because any responsive document, to the extent they were generated 16 years ago, are unlikely to be available today. (Doc. No. 37: PSE Reply at 14).

Given the corporate history of BAC and the Merrill Lynch subsidiaries, it is much more likely that the discovery sought by Petitioners is within the possession of PSE and German prosecutors. For instance, many of Petitioners' document requests are for communications involving PSE or for PSE documents, including "[c]ommunications between Merrill Lynch and [PSE]," "[d]ocuments . . . relating to meetings or telephone calls between Merrill Lynch and . . . [PSE]," and "[c]ommunications relating to . . . contracts for [PSE] to acquire or sell Volkswagen Securities or Options." (Doc. No. 33-18: Han Dec. Ex. R at 5; Doc. No. 2: Pet. Mem. at 10-11). Thus, this Court agrees with the Southern District of New York which found that the requested discovery "should be in the files of the German prosecutors" and there is "a mechanism in Germany to obtain those documents, if necessary." (Doc. No. 33-1: Han. Dec. Ex. A at 24-25). Because Petitioners could obtain the requested discovery from other sources without imposing an undue burden on BAC, the fourth factor weighs in favor of PSE.

### IV. CONCLUSION

As detailed above, the Court finds that three of the four *Intel* factors weigh against exercising its discretion to grant § 1782 discovery in the circumstances of this case.

**IT IS, THEREFORE, ORDERED** that PSE's motion to vacate, (Doc. No. 30), is **GRANTED** and the *ex parte* Order, (Doc. No. 7), is **VACATED**.

**IT IS FURTHER ORDERED** that Petitioners' motion to compel compliance, (Doc. No. 10), and BAC's motion to quash, (Doc. No. 14), are **MOOT**.

SO ORDERED.

Signed: April 18, 2022

Robert J. Conrad, Jr.
United States District Judge